UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**CARLOS JIMENZ AVILES,**

        **Plaintiff,**

**v.**                                   **Case No:   6:16-cv-127-Orl-37GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Carlos Jimenez Aviles (the "Claimant") appeals from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Doc. No. 1. Claimant argues that the Administrative Law Judge (the "ALJ") erred by failing to apply the correct legal standards to the medical opinion of Dr. Rebecca C. Villar, Psy.D., a consultative examining psychologist, who completed a neuropsychological evaluation of Claimant. Doc. No. 12 at 5-7, 12-17. More specifically, Claimant argues that the ALJ erred by failing to state with particularity the weight given and the reasons therefor to Dr. Villar's medical opinion. Doc. No. 12 at 13-14.[1] For the reasons that follow, it is recommended that the Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings.

**I.   THE ALJ'S FIVE-STEP DISABILITY EVALUATION PROCESS.**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is

---

[1] Claimant also argues that the ALJ erred by failing to apply the correct legal standards to the medical opinion of a non-examining physician. Doc. No. 12 at 17-20.

disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. at 1278 (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

## II.    STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.

*Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).  The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'"  *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

### III.  **ANALYSIS.**

The central issue of this case is what are the functional limitations resulting from Claimant's mental impairments.  The ALJ's handling of the medical opinion evidence from the only examining psychologist in record, Dr. Rebecca C. Villar, Psy.D., who performed a consultative neuropsychological evaluation of Claimant at the behest of Claimant's treating neurologist, is critical to resolving that issue.  R. 581-95.[2]  As set forth above, Claimant argues that the ALJ failed to apply the correct legal standard to Dr. Villar's opinion because the ALJ failed to state with particularity the weight given to it and the reasons therefor.  Doc. No. 12 at 12-14.  The Commissioner concedes that the ALJ erred by failing to state with particularity the weight given and the reasons therefor to Dr. Villar's medical opinion, but the Commissioner maintains the ALJ's error is harmless because Dr. Villar's medical opinion is consistent with the ALJ's

---

[2] Dr. Villar's evaluation is set forth in full in three separate sections of the record (*see* R. 445-59, 513-27, 581-95).  For ease of reference, the undersigned will cite only to pages 581 through 595 of the record in this report and recommendation.

residual functional capacity assessment ("RFC"). Doc. No. 12 at 14-17. For the reasons that follow, the undersigned rejects the Commissioner's argument.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's sequential evaluation process for determining disability. In cases like this one, involving the ALJ's handling of such medical opinions, "substantial-evidence review . . . involves some intricacy." *Gaskin v. Commissioner of Social Security*, 533 F. App'x. 929, 931 (11th Cir. Aug. 14, 2013) (unpublished).[3] In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis; what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement constitutes an opinion, which requires the the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1179 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error). Based on the foregoing, an ALJ may not "implicitly discount" or ignore any medical opinion, but is required to state with particularity the weight given to it and the reasons therefor. *See Winschel*, 631 F.3d at 1179-79; *MacGregor*, 786 F.2d at 1053; *McClurkin v. Social*

---

[3] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

*Sec. Admin.*, -- F. App'x --, 2015 WL 5166045 at *2 (11th Cir. Sept. 4, 2015) (unpublished) (reversible error for ALJ to fail to state weight given to non-examining physician's opinion).

In this case, Claimant alleges an onset of disability as of December 1, 2012, and he is insured for DIB through June 30, 2018. R. 15, 17. On March 27 and April 10, 2014, Claimant presented to Dr. Villar for a neuropsychological evaluation upon referral from Dr. Daniel Nieves-Quinones, Claimant's treating neurologist. R. 581. Dr. Villar reviewed Claimant's medical records and subjective complaints, performed a mental status examination, and administered a number of objective tests. R. 581-95. Dr. Villar's report offers a number of medical opinions, including but not limited to the following:

1. Claimant's "overall intellectual functioning . . . fell within the low average range." (R. 586);

2. Claimant's working memory and processing speed fell within the low average range (R. 586);

3. Relative intellectual strength in visual-associative reasoning, average reading comprehension and mental arithmetic abilities, and high average mathematical calculation abilities (R. 586);

4. Borderline impaired auditory immediate memory and low average auditory working memory with average auditory sequencing abilities, but average overall auditory memory (R. 586-87);

5. Low-average ability to follow increasingly complex verbal commands and borderline impaired on complex working memory (R. 586);

6. Overall average ability for selective attention on sustained attention tasks (R. 587);

7. Low average mental flexibility and Claimant's ability to maintain cognitive set was extremely low (R. 587); and

8. High average visual memory (R. 588).

With respect to Claimant's personality and emotional functioning, Dr. Villar opined as follows:

> [Claimant's] thought processes are likely to be marked by confusion, distractibility, and difficulty concentrating. . . .

> [Claimant] is experiencing a significant depressive episode, likely including feelings of worthlessness, hopelessness, and personal failure. . . . [Claimant] is also experiencing significant anxiety and tension, with most notable symptoms in the cognitive domain. He is likely to have worry and negative expectations to the degree that his ability to concentrate is significantly compromised. He is likely to be overly concerned with issues and events over which he has no control. . . . He may at times fear his impulses and doubt his ability to control them. He tends to be perfectionistic, inflexible, unyielding, and fairly rigid, which further adds to his stress level and the pressure he places on himself. He ruminates to the point where he has difficulty making decisions and perceiving the larger significance of decision that are made. Changes in routine, unexpected events, and contradictory information tends to generate untoward stress.

R. 588-89.  Thus, Dr. Villar opined that Claimant has "difficulty concentrating" due to Claimant "experiencing a significant depressive episode," and having "significant anxiety and tension". R. 588-89.

In addition, Dr. Villar opined:

> In combination with his self-report, history, and presentation, the current test results do not support an organic basis for [Claimant's] cognitive concerns. It appears most likely that his significant anxiety symptoms in combination with his Type A personality style are causing the decrease in concentration, processing speed, and related cognitive abilities. His difficulties appear further exacerbated by his current depression. . . .

R. 590.[4]  Thus, Dr. Villar further opined that Claimant's anxiety, depression, and personality limit the Claimant's concentration, processing speed and other cognitive abilities. R. 590. Dr. Villar recommended that Claimant receive repeat neuropsychological evaluations, weekly individual therapy sessions, a cognitive retraining program, daily relaxation exercises, pharmacological treatment, and the implementation of "quiet times" during periods of heightened emotional intensity or frustration. R. 591. Dr. Villar also recommended "the use of structure, repetition,

---

[4] In her opinion, Dr. Villar finds that based upon Claimant's test results, his symptoms are not consistent with attention-deficit hyperactivity disorder. R. 590.

and external strategies to assist [Claimant] in being successful in a work setting." R. 591. Upon Claimant's return to his neurologist, Dr. Nieves-Quinones's treatment notes state that Dr. Villar's evaluation was "for the most part average," however, "the abnormalities were found [not related to] organic factors," and that anxiety and stress were the likely contributors to the Claimant's symptoms. R. 604. Thus, based on Dr. Villar's evaluation, Dr. Nieves-Quinones noted that Claimant's mental impairments rather than physical or neurological impairments were the likely cause of Claimant's reported symptoms. R. 604.

In the decision, at step-two of the sequential evaluation process, the ALJ finds that Claimant has the following severe impairments: affective and anxiety disorders, and attention deficit disorder, and attention-deficit hyperactivity disorder. R. 17. At step-three, with respect to the domain of concentration, persistence or pace, the ALJ finds that Claimant has only moderate limitations because Claimant can drive, read, use a computer, finish tasks and manage his finances. R. 18. Ultimately, the ALJ determines that Claimant retains the following RFC:

> The claimant is able to perform short and simple instructions and is able to perform routine tasks on a sustained basis. He has adequate understanding and memory skills to perform appropriately in a work setting. He has the ability to relate effectively in general. He should have only occasional interaction with supervisors, coworkers, and supervisors.

R. 19. In making this finding, the ALJ states:

> The claimant testified to mental problems . . .; however, there is no medical evidence that demonstrates more than mild to moderate limitations in this case. Specifically, <u>the claimant has never</u> . . . <u>experienced any medically documented difficulties with</u> activities of daily living, social functioning, <u>concentration and task persistence, and adaptation to work or work-like situations</u>.

R. 21 (emphasis added). Thus, the ALJ expressly states that the record contains no medically documented difficulties with "concentration and task persistence, and adaptation to work or work-like situations." R. 21.

With respect to Dr. Villar's evaluation, the ALJ reviews Claimant's self-reports and Dr. Villar's diagnoses, but the ALJ fails to discuss any of Dr. Villar's test results, medical opinions, or her recommendations.  R. 20-21.  The ALJ states:

> On March 27 and April 10/22, 2014, Dr. Rebecca C. Villar, an evaluating neuropsychologist, was [sic] the claimant for complaints of difficulties with memory, paying attention, maintaining concentration, losing train of thought, multitasking, feeling less alert and following instructions or directions due to forgetting steps.  He experienced mood changes and frustration after job searches or interviews.  He was distracted by both internal and external stimuli.  His mind frequently went blank and became easily confused.  He related that tasks took more attention and effort.  He had difficulty with problem solving, learning how to do new things, completing an activity in a reasonable amount of time, changing an activity as needed, planning ahead, and thinking quickly.  He had difficulty with both recent and remote memory.  He forgot what he was doing or why he walked into a room at times.  He forgot factual information, names and some conversations.  He had difficulty with word retrieval, speech initiation, and word substitution.  He had difficulty with reading, comprehension and retention.  He was more irritable, impatient, easily frustrated, apathetic, unmotivated and emotionally sensitive.  His emotions were more intense and had greater difficulty controlling them.  He had verbal temper outbursts periodically and was more impulsive.  He experienced increased worry.  He reported depressive symptoms of sadness, fatigue, anhedonia, helplessness, decline in sexual interest, and negative thoughts about self.  The diagnoses were major depressive episode, single episode, moderate; generalized anxiety disorder; hypertensions and sleep apnea by history; and a Global Assessment of Functioning (GAF) of 60.

R. 20-21.  Thus, the ALJ's decision fails to address Dr. Villar's test results, medical opinions, or her recommendations.  *Compare* R. 20-21 *with* R. 585-95.  As the Commissioner concedes, the ALJ failed to state with particularity the weight given to Dr. Villar's opinions and the ALJ's reasons therefor.  R. 20-21.  Pursuant to *Winschel*, 631 F.3d at 1178-79, the ALJ's failure to do so is an error.

The Commissioner argues that the ALJ's error is harmless because the ALJ's RFC is consistent with Dr. Villar's opinions. Doc. No. 12 at 14.[5] The undersigned respectfully disagrees. The ALJ made a material misstatement of fact concerning the Claimant's non-exertional functional abilities. The ALJ expressly finds that "the claimant has never . . . experienced any medically documented difficulties with . . . concentration and task persistence, and adaptation to work-like situations." R. 21. Yet, Dr. Villar clearly opined that Claimant's mental impairments are so severe that "his ability to concentrate is significantly compromised." R. 588. Moreover, Dr. Villar opined that Claimant's anxiety and depression limit his processing speed, as well as other cognitive abilities, and Dr. Villar's test results revealed that Claimant has a low average working memory. R. 586, 590. Dr. Villar's medical opinions are based, in part, on results obtained from the battery of tests she administered to Claimant. Thus, the record demonstrates that Claimant has, in fact, experienced medically documented difficulties with concentration, processing speed and working memory. The ALJ's finding to the contrary is not an accurate reflection of the medical record. The ALJ's inaccurate finding is exacerbated by the fact that Dr. Villar is the only examining psychologist who provided a medical opinion in this case.

As set forth above, the ALJ fails to address any of Dr. Villar's test results, her opinions as to Claimant's functional limitations, or her recommendations. However, the ALJ appears to have credited at least a portion of Claimant's subjective statements because the ALJ's RFC limits the Claimant to short, simple instruction on routine tasks. R. 19. It appears the ALJ assessed those limitations without considering Dr. Villar's opinions and recommendations. As such, it is entirely unclear what limitations the ALJ may have found if the ALJ considered Dr. Villar's opinions,

---

[5] Given the number of opinions Dr. Villar expressed and the fact the ALJ fails to address any of them, the undersigned will not detail every inconsistency between Dr. Villar's opinions and the ALJ's RFC assessment. *Compare* R. 20-21 *with* R. 585-95.

including her opinion that Claimant's ability to concentrate is significantly compromised. If the Court were to resolve that issue on appeal in order to determine whether the ALJ's RFC assessment is consistent with the totality of Dr. Villar's opinions, the Court would necessarily be required to impermissibly weigh her opinions. *See Phillips*, 357 F.3d at 1240 n.8 (Court may not decide facts anew or reweigh the evidence). Accordingly, the ALJ's failure to state with particularity the weight given to Dr. Villar's opinions and the reasons therefor is not a harmless error because it makes it impossible for the Court to determine whether the final decision is supported by substantial evidence. *See Winschel*, 631 F.3d at 1179.[6]

## IV. CONCLUSION.

Based on the foregoing, it is **RECOMMENDED** that:

1. The Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings pursuant to sentence four of Section 405(g); and

2. The Clerk be directed to enter judgment in favor of the Claimant and against the Commissioner, and to close the case.

## NOTICE TO PARTIES

A party waives the right to challenge on appeal a finding of fact or conclusion of law adopted by the district judge if the party fails to object to that finding or conclusion within fourteen days after issuance of the Report and Recommendation containing the finding or conclusion. In order to expedite the final disposition of this matter, if the parties have no objection to this report

---

[6] The ALJ's error with respect to Dr. Villar's opinions is dispositive of the case. Therefore, it is unnecessary to address Claimant's remaining argument that the ALJ also erred with respect to other medical opinion evidence of record. *See supra* n.1; *see also Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Social Sec. Admin*., -- F. App'x --, 2015 WL 5166045, at *3 (11th Cir. Sept. 4, 2015) (unpublished) (no need to analyze other issues when case must be reversed due to other dispositive errors).

and recommendation, they may promptly file a joint notice of no objection.

**RECOMMENDED** in Orlando, Florida on September 28, 2016.

> _____
> GREGORY J. KELLY
> UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record